

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

March 30, 1964

Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. C- 232

Re: Whether the Texas Education
Agency should, in determining
the economic index and in
calculating the amount of
local funds to be charged
to each school district in
Harrison County, remove from
the total "value added by
manufacture" the value of
products manufactured on
federally-owned military
reservations in Harrison
County.

Dear Mr. Edgar:

Your office has requested an opinion on the following
question:

"In determining the economic index and
in calculating the amount of local funds to
be charged to each school district in Harrison
County, legally may and should the Texas Educa-
tion Agency remove from the total 'value added
by manufacture' for Harrison County the value
of products manufactured at Longhorn Ordnance
Works?"

The facts contained in your statement are the following:

"Located within the Karnack Independent
School District in Harrison County is a govern-
ment-owned and controlled installation known as
'Longhorn Ordnance Works.' It reportedly com-
prises (8,500 acres) 13.32 square miles of area
in the Karnack district which has 114 square
miles of territory. For purposes of Section 5
of Article 2922-16, the Longhorn Ordnance Works
installation is recognized by this Agency as a
Federal-owned military reservation within the

-1124-

confines of the Karnack district; the school
district enjoys an adjusted reduction in its
local fund assignment therefor as prescribed
and provided in the law.

"This reservation (Longhorn Ordnance Works)
and its facilities are not assessed for taxes;
it does not comprise any portion of the assessed
valuation in or for Harrison County. The reserva-
tion is under the direct control of the United
States Army, Ordnance Corps; all its lands and
facilities are owned by the Government.

"The Government has contracted with a
corporation (Thiokol Chemical Corporation) for
the manufacture and sale of certain rocket fuels.
All payments are made to Thiokol by the United
States Army; all its products are sold exclusively
to the Government. All expenditures of every kind
including payrolls and manufacture made by Thiokol
are reimbursed to Thiokol by the Government, sub-
ject to approval and acquiescence of the Government.
Located upon the reservation are reservation em-
ployees of the Government, under the direction of
its Commanding Officer.

"In determination of the economic index for
Harrison County, there has been included the
factor, 'value added by manufacture', for Harrison
County pursuant to subdivision c (Article 2922-16,
Section 3). The total value added by manufacture
for Harrison County encompasses the value of pro-
ducts manufactured at the reservation by Thiokol
which are rocket fuels, their value being collec-
tively reported under the broad category, trans-
portation equipment, in Department of Commerce
Reports. The economic index calculated by this
Agency for Harrison County does not include nor
add a value for 'payrolls' at Thiokol; this be-
cause the reservation or Thiokol is not recognized
as a retail, wholesale or service establishment
referred to in subdivision c for payroll factor
purposes.

"A school district in Harrison County. . .
vigorously complains and contends that value
of manufacture  of products manufactured at
Thiokol legally should not have come into the

calculations of the economic index for Harrison County, that such value should have been ascertained from proper Government reporting agencies and deducted from the total 'value added by manufacture' determined for Harrison County in arriving at that county's economic index. Further, that not to deduct such 'value' results in an improper and unfair charging of higher local fund assignments against the local school districts of Harrison County and particularly the Marshall district; that the law itself contemplates that value of manufacture of tax exempt reservations or corporations, such as Thiokol, should not be used in arriving at the economic index."

Section 3 of Article 2922-16, in so far as pertinent to the presentation herein, prescribes as follows:

"In determining the taxpaying ability of each school district, the State Commissioner of Education, subject to the approval of the State Board of Education, shall calculate an economic index of the financial ability of each county to support the Foundation School Program. The economic index of a county shall be calculated to approximate the percent of the total taxpaying ability in the State which is in a given county, and shall constitute for the purpose of this Act a measure of one county's ability to support schools in relation to the ability of other counties of the State. The economic index for each county shall be based upon and determined by the following weighted factors:

    a.  Assessed valuation of the county, weighted by. . .(20);

    b.  Scholastic population of the county, weighted by. . .(8);

    c.  Income for the county measured by: Value added by manufacture, value of minerals produced, value of agricultural products, payrolls for retail establishments, payrolls for wholesale establishments, payrolls for service establishments, weighted collectively by. . .(72).

" . . ."

Section 5 of Article 2922-16 recites the formula for determination (annually) of the amount of local funds to be charged to each school district in support of its local school operation as follows:

"Divide the State and county assessed valuation of all property in the county subject to school district taxation for the next preceding school year into the State and county assessed valuation of the district for the next preceding school year, finding the district's percentage of the county valuation. Multiply the district's percentage of the county valuation by the amount of funds assigned to all of the districts in the county. The product shall be the amount of local funds that the district shall be assigned to raise toward the financing of its foundation school program.

"Provided, however, that in any district containing. . ., Federal-owned military reservations. . .the amount assigned to such school district shall be reduced in proportion that the area included in the above-named classification bears to the total area of the district."
. . .

Section 3 of Article 2922-16 of Vernon's Civil Statutes provides that the Texas Education Agency shall calculate an economic index of the financial ability of each county to support the Foundation School Program. It further provides three guides to measure the wealth of a county: (1) land value, (2) scholastic population and (3) income. In this instance we are concerned with the third, i.e., income, specifically, income for the county measured by value added by manufacturing within that county.

Although there is a specific exclusion of federally-owned military reservation areas in the county, this office can find no exclusions in the statutes or cases which would support a contention that income created by the manufacturing of transportation equipment (rocket fuel) on a federal reservation by an independent contractor should not be included in determining the economic index of a county.

Furthermore, we cannot conceive of any reason why, from an economic standpoint, the income from a manufacturing

independent contractor, who sells all of his manufactured products to the Federal Government, is not the same and should not stand on the same footing as other manufacturing concerns in arriving at the economic index of a county.

### SUMMARY

In determining the economic index and in calculating the amount of funds to be charged to each county, the Texas Education Agency should include the income for the county using the "value added by manufacturing" of an independent contractor on a federally-owned military reservation.

Yours very truly,

WAGGONER CARR
Attorney General

By: Bill Morse, Jr.
Bill Morse, Jr.
Assistant

BMjr:sj:mkh

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Pat Bailey
Paul Phy
Paul Robertson
Gordon Appleman

APPROVED FOR THE ATTORNEY GENERAL
BY: H. Grady Chandler